IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CASE NO. 5:14-CV-00137-RLV-DCK

| | |
|---|---|
| ALVIN LINEBERGER, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>)<br>)<br>NEWTON POLICE DEPARTMENT, TOU- )<br>BER YANG, AND JAMIE LOWE, )<br>)<br>)<br>Defendants. )<br>)<br>) | **ORDER** |

**THIS MATTER IS BEFORE THE COURT** on Defendants' Partial Motion to Dismiss. (Doc. 66). Having been fully briefed and considered, the Defendants' motion is now ripe for disposition. For the reasons stated below, Defendants' Partial Motion to Dismiss (Doc. 66) is **GRANTED**.

**I. BACKGROUND**

For the purposes of this Motion, the Court accepts the following facts derived from the Plaintiff's Complaint as true. *See Darcangelo v. Verizon Commc'ns, Inc.*, 292 F.3d 181, 189 (4th Cir.2002) (noting that "at the motion to dismiss stage, a court must accept the allegations of the complaint as true and view the complaint in the light most favorable to the plaintiff").

This case concerns an interaction between Officer Tou-Ber Yang ("Yang") and Officer Jamie Lowe ("Lowe") of the Newton Police Department and Plaintiff Alvin Lineberger. The

1

interaction occurred on February 7, 2013, and commenced with Yang and Lowe knocking on the door of Lineberger's residence in search of Lineberger's son. (Doc. 59 at 3). Lineberger, who was in the shower when Yang and Lowe knocked, answered the door wearing only a towel. *Id*. Lineberger informed Yang and Lowe that his son did not live at his residence. *Id*. Lineberger then attempted to close the door to terminate his interaction with Yang and Lowe; however, Lowe stuck his foot across the threshold of Lineberger's front door, preventing Lineberger from closing the door. *Id.* at 4. Matters escalated, with Lowe refusing to remove his foot from the threshold of the door unless Lineberger consented to Yang and Lowe searching his residence. *Id.* When Lineberger declined to consent to the search, Yang and Lowe demanded that Lineberger produce identification. *Id.* Lineberger declined to comply with Yang and Lowe's demand even as Yang and Lowe threatened him with arrest if he did not produce identification. *Id*. at 4-5. With Lowe continuing to refuse to remove his foot from the threshold of Lineberger's front door and Yang and Lowe continuing to demand identification, Lineberger stated, allegedly in "obvious sarcasm," that he was "Jesse James."[1]

Apparent to Lineberger that Yang and Lowe would not depart unless he produced identification, Lineberger ultimately ceded to the request and retreated into his residence to retrieve his identification. *Id.* at 5. While Lineberger was retrieving his identification, Yang and Lowe entered the front of Lineberger's residence. *Id.* at 5-6. When Lineberger returned to the front room of his residence with his identification, "he became upset" that Yang and Lowe had entered his residence and requested that Yang and Lowe leave his residence. *Id.* at 6. Yang and Lowe refused to comply with Lineberger's request, instead demanding that Lineberger hand over his identification within five seconds. *Id.* When Lineberger failed to comply with this demand, Yang

---

[1] The Court takes judicial notice that "Jesse James" was an infamous outlaw linked to multiple bank robberies, train robberies, and murders in the mid to late 1800s.

and Lowe arrested Lineberger on charges including obstruction and delay of an investigation and providing false information.  *See id*.

Lineberger was transported to jail wearing only the towel he had wrapped around his body when he answered Yang and Lowe's knock.  *Id.*  At the jail, Lineberger's towel fell off, fully exposing Lineberger's naked body to the magistrate judge, other arrestees, and jail employees.  *Id*. Lineberger alleges that the experience of being arrested and then having his towel fall off in jail caused him "worry," "embarrassment," "humiliation," and "mental anguish," and resulted in "great emotional pain" and "severe emotional distress."  *Id.* at 6, 15-16.  Lineberger remained in custody at the jail for a day.  *Id.*  The charges against Lineberger were dismissed due to a lack of evidence.  *Id.* at 6.

Lineberger filed a second amended complaint raising: (1) claims under 42 U.S.C. § 1983 (2012) for Fourth, Fifth, and Fourteenth Amendment violations based on Yang and Lowe's search of his residence, his arrest, and his imprisonment (Causes of Action One through Three); (2) a claim under 42 U.S.C. § 1985(3) (2012) alleging that Yang and Lowe conspired to commit the civil rights violations identified in his § 1983 claims (Cause of Action Four); and (3) state law claims for trespass by public officer, negligence, gross negligence, negligent infliction of emotional distress, intentional infliction of emotional distress, and malicious prosecution (Causes of Action Five through Ten).  *Id.* at 8-16.  Defendants filed this Partial Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6), seeking dismissal of (1) all claims against the Newton Police Department, (2) the 42 U.S.C. § 1985 claim, (3) the state law claims for negligent infliction of emotional distress and intentional infliction of emotional distress, and (4) the portion of Lineberger's 42 U.S.C. § 1983 claims alleging violations of his Fifth Amendment and of his Fourteenth Amendment rights.  (Doc. 66).

## II. DISCUSSION

### 1. *Standard of Review*

When reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6), this Court must examine the legal sufficiency of the complaint; it may not resolve factual disputes or weigh the claims and defenses against one another. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). Rather, the court must accept as true all of the well-plead factual allegations contained in the complaint. *See Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). A court may, however, determine whether the facts alleged are sufficient, when taken at face-value, to reasonably imply liability on the part of the defendant. In order to survive such a motion, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Indeed, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible when the factual content allows for the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*

Moreover, a pleading that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678. In order to assert a claim for relief, the complaint must allege facts that imply more than a "sheer possibility that a defendant has acted unlawfully" or "facts that are 'merely consistent with' a defendant's liability[.]" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557). Critically, "'[t]he presence . . . of a few conclusory legal terms does not insulate a complaint from dismissal . . . when the facts alleged in the complaint' cannot support the legal conclusion" alleged or the relief sought. *See Migdal v. Rowe Price-Fleming Int'l*, 248 F.3d 321, 326 (4th Cir. 2001) (quoting *Young v. City of Mount Ranier*, 238 F.3d

567, 577 (4th Cir. 2001)). "Legal inferences drawn from the facts, unwarranted inferences, unreasonable conclusions, or arguments are not part of the [court's] consideration." *Dolgaleva v. Va. Beach City Pub. Sch.*, 364 F. App'x 820, 827 (4th Cir. 2010); *see also E. Shore Mkts., Inc. v. J.D. Assocs. LLP*, 213 F.3d 175, 180 (4th Cir. 2000).

    2. *Claims Against Newton Police Department*

Defendants contend that the Newton Police Department is not an entity subject to suit for purposes of 42 U.S.C. § 1983 because North Carolina law makes police departments subdivisions of cities, thus making the City of Newton the proper party in this instance. (Doc. 66-1 at 5-6). Defendants further contend that Lineberger is unable to substitute the City of Newton for the Newton Police Department because the statute of limitations has expired and any amendment to the complaint would not relate back to his original complaint. *Id.* at 6, 10; *see also* Fed. R. Civ. P. 4(m); Fed. R. Civ. P. 15(c)(1)(C). Lineberger's response to the Partial Motion to Dismiss indicates that he "does not oppose dismissal of his claims against the Newton Police Department." (Doc. 70 at 6). Accordingly, all claims against the Newton Police Department will be dismissed with prejudice and the Newton Police Department will be terminated as a defendant. *See Jones v. City of Greensboro*, 277 S.E.2d 562, 576 (N.C. Ct. App. 1981) (holding that city police department is a "component part[]" of city and not an entity subject to suit under § 1983) (*overruled on other grounds by Fowler v. Valencourt*, 435 S.E.2d 530, 533 (N.C. 1993)); *see also Waller v. Butkovich*, 584 F. Supp. 909, 925 (M.D.N.C. 1984) (dismissing claim against Greensboro Police Department because police department was not an "independent legal entity" from City of Greensboro).

    3. *42 U.S.C. § 1985(3) Claim*

Defendants contend that Lineberger's complaint fails to allege the elements of a claim under 42 U.S.C. § 1985(3) in that the complaint's allegation of a conspiracy is conclusory and that

the complaint fails to allege that Yang and Lowe's entry into Lineberger's residence and arrest of Lineberger were motived by a discriminatory animus toward a class of individuals within which Lineberger falls. (Doc. 66-1 at 6-9). Defendants further contend that Lineberger's complaint is not subject to amendment because the statute of limitations has expired and any amendment would not relate back to the filing of Lineberger's complaint because the original complaint was wholly deficient of the essential elements of a claim under § 1985(3). *Id.* at 9-10. Finally, Defendants contend that the intracorporate conspiracy doctrine bars any claim based on an alleged conspiracy between Yang and Lowe. *Id.* at 11. Lineberger's response to the partial motion to dismiss indicates that he "does not oppose dismissal of his claim under 42 U.S.C. § 1985." (Doc. 70 at 6). Accordingly, Lineberger's 42 U.S.C. § 1985(3) claim, Cause of Action Four, will be dismissed with prejudice. *See Simmons v. Poe*, 47 F.3d 1370, 1376 (4th Cir. 1995) (identifying "motivate[ion] by a specific class-based, invidiously discriminatory animus" as essential element to claim under § 1985(3)).

*4. Negligent and Intentional Infliction of Emotional Distress Claims*

Defendants contend that Lineberger's complaint fails to plead allegations sufficient to sustain a claim for negligent infliction of emotional distress or for intentional infliction of emotional distress. (Doc. 66-1 at 12-16). To sustain a claim for negligent infliction of emotional distress, "a plaintiff must allege that (1) the defendant negligently engaged in conduct, (2) it was reasonably foreseeable that such conduct would cause the plaintiff severe emotional distress (often referred to as 'mental anguish'), and (3) the conduct did in fact cause the plaintiff severe emotional distress." *Johnson v. Ruark Obstetrics & Gynecology Assocs., P.A.*, 395 S.E.2d 85, 97 (N.C. 1990). To sustain a claim for intentional infliction of emotional distress, a plaintiff must allege "1) extreme and outrageous conduct by the defendant 2) which is intended to and does in fact cause

3) severe emotional distress." *Waddle v. Sparks*, 414 S.E.2d 22, 27 (N.C. 1992) (internal quotation marks omitted).

Defendants challenge whether Lineberger's complaint alleges that he suffered from a mental condition of sufficient magnitude to rise to the level of severe emotional distress. (Doc. 66-1 at 12-13). Under North Carolina law, "'[i]t is for the court to determine whether on the evidence severe emotional distress can be found . . . .'" *Waddle*, 414 S.E.2d at 28 (quoting Restatement (Second) of Torts § 46 cmt. J (1965)). The North Carolina Supreme Court has defined the phrase "severe emotional distress" as "any emotional or mental disorder, such as, for example, neurosis, psychosis, chronic depression, phobia, or any other type of severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so." *Johnson*, 395 S.E.2d at 97; *see also Waddle*, 414 S.E.2d at 27 (adopting *Johnson*'s definition of "severe emotional distress" for purposes of intentional infliction of emotional distress claim).

Lesser emotional distress, in the form of "temporary fright, disappointment, or regret," is insufficient to support the element of severe emotional distress or mental anguish. *Johnson*, 395 S.E.2d at 97 (citing *Hancock v. Tel. Co.*, 49 S.E. 952, 953 (N.C. 1905). Furthermore, the Restatement (Second) of Torts, as adopted in *Waddle*, distinguishes emotional distress, in the form of "worry," "humiliation," and "embarrassment," from severe emotional distress:

> "Emotional distress passes under various names, such as mental suffering, mental anguish, mental or nervous shock, or the like. It includes all highly unpleasant mental reactions, such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry, and nausea. *It is only where it is extreme that the liability arises*. Complete emotional tranquility is seldom attainable in this world, and some degree of transient and trivial emotional distress is a part of the price of living among people. *The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it*."

7

*Waddle*, 414 S.E.2d at 27-28 (emphasis in original) (quoting Restatement (Second) of Torts § 46 cmt. J). Finally, when considering whether an allegation of emotional distress could be found to rise to the level of severe emotional distress, a court shall consider the intensity and duration of the alleged distress. *Id.* at 28 (quoting Restatement (Second) of Torts § 46 cmt. J); *see also Pruett v. Town of Spindale, N.C.*, 162 F. Supp.2d 442, 447 (W.D.N.C. 2001) (holding complaint alleging "gratuitous use of physical force" and "emotional distress" insufficient to support "severe emotional distress" element and that amendment to the complaint would be futile unless "plaintiff can allege *ongoing* emotional or mental-health treatment for severe emotional distress that has been diagnosed as related to the alleged conduct" (emphasis added)).

Lineberger's allegation of experiencing "worry," "embarrassment," and "humiliation" is insufficient to rise to the level of severe emotional distress. These emotions constitute neither a diagnosable emotional or mental disorder nor a mental state comparable to the mental conditions identified in *Johnson*'s definition of the phrase "severe emotional distress." The emotions of worry, embarrassment, and humiliation, independent of any additional allegation of emotional distress, are not emblematic of the type of emotions and distress that "no reasonable man could be expected to endure."[2] Finally, Lineberger's complaint makes few allegations regarding the

---

[2] Lineberger's additional allegations the he suffered "mental anguish," "great emotional pain," and "severe emotional distress," are mere conclusory recitations of the elements of the claim that do not constitute factual allegations capable of supporting the element of "severe emotional distress." *See Horne v. Cumberland Cty. Hosp. Sys., Inc.*, 746 S.E.2d 13, 20 (N.C. Ct. App. 2013) (allegation that plaintiff suffered "severe emotional distress" insufficient to sustain negligent infliction of emotional distress claim where complaint devoid of allegations regarding "the type, manner, or degree" of the severe emotional distress experienced). Furthermore, Lineberger's reliance on *McKnight v. Simpson's Beauty Supply, Inc.*, 358 S.E.2d 107 (N.C. Ct. App. 1987), for the proposition that an allegation of "shock[] and upset" is sufficient to advance an intentional infliction of emotional distress claim is misplaced. First, it is not apparent that *McKnight* is a correct statement of North Carolina law as it stands today because *McKnight* predates the Supreme Court of North Carolina's rulings in *Johnson* and *Waddle* and fails to recognize the "severe" aspect of the emotional distress as expressed in both cases. *See McKnight*, 358 S.E.2d at 109. Second, the language in *McKnight* that Lineberger relies on (1) addresses the narrower question of whether a plaintiff must present expert testimony regarding the alleged severe emotional distress and (2) is dicta in light of the case's holding that the trial court did not err by not submitting the intentional infliction of emotional distress claim to the jury where McKnight failed to establish a different element of the claim. *See id.* at 109-10.

intensity, impact, and duration of the mental pain he experienced, alleging only that his emotional distress "continues" and advancing this allegation only within his cause of action for intentional infliction of emotional distress. Accordingly, while it is conceivable that Lineberger suffered severe emotional distress, his complaint does not contain allegations sufficient to establish the element of "severe emotional distress."[3] Therefore, Lineberger's claims for negligent infliction of emotional distress, Cause of Action Eight, and intentional infliction of emotional distress, Cause of Action Nine, are dismissed without prejudice.[4]

5. *42 U.S.C. § 1983 Claims Alleging Fifth Amendment Violations*

Lineberger's first three causes of action allege that his claims under 42 U.S.C. § 1983 arise from violations of his Fourth, Fifth, and Fourteenth Amendment rights. (Doc. 59 at 4, 8-10). Defendants move to dismiss the portions of Lineberger's § 1983 claims that allege independent violations under the Fifth Amendment and under the Fourteenth Amendment. (Doc. 66-1 at 16-17). Defendants argue that Lineberger's § 1983 claims arise solely under the Fourth Amendment, as incorporated by the Fourteenth Amendment. (Doc. 66-1 at 16-17). Lineberger, relying on *Goodwin v. Metts*, 885 F.2d 157 (4th Cir. 1989), argues that his false arrest and false imprisonment constitute deprivations of his liberty without due process of law, in violation of his Fifth Amendment rights and of his Fourteenth Amendment rights, independent of and in addition to alleged violations of his Fourth Amendment rights. (Doc. 70 at 11-13).

---

[3] In response to Defendants' partial motion to dismiss, Lineberger cites his answers to Defendants' interrogatories for the allegation that he "has suffered anxiety" beyond "garden-variety anxiety" as a result of his arrest and from his towel falling off at the jail. (Doc. 70 at 8). While an allegation that Lineberger suffered from an anxiety disorder might be sufficient to plead the element of severe emotional distress, this Court, when reviewing Defendants' Partial Motion to Dismiss, must confine itself to the four corners of Lineberger's complaint, matters subject to judicial notice, documents incorporated into the complaint by reference, and documents attached to the motion to dismiss. *See U.S. ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014).

[4] Because this Court finds that Lineberger's complaint fails to allege facts sufficient to support the element of severe emotional distress, the Court need not consider Defendants' alternative argument that Lineberger's claim of intentional infliction of emotional distress should be dismissed because the complaint did not allege facts sufficient to establish that Yang and Lowe's conduct was "extreme and outrageous." (*See* Doc. 66-1 at 13-16).

In *Goodwin*, the United States Court of Appeals for the Fourth Circuit concluded that a § 1983 litigant may ground claims for false arrest and wrongful prosecution coming within the Fifth Amendment if the claims involve the deprivation of liberty as a result of the denial of due process. *Goodwin*, 885 F.2d at 163 (citing *Jennings v. Shuman*, 567 F.2d 1213, 1220 (3d Cir. 1977)). The United States Supreme Court subsequently determined that a § 1983 claim for malicious prosecution does not present an independent due process violation under the Fifth Amendment and that "substantive due process may not furnish the constitutional peg on which to hang [a malicious prosecution] 'tort.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (plurality opinion); *see also id*. at 275 (Scalia, J., concurring); *id*. at 280 (Kennedy, J., concurring in judgment and joined by Thomas, J.); *id*. at 281 (Ginsburg, J., concurring); *id*. at 288-89 (Souter, J., concurring in judgment). The Fourth Circuit has recognized that *Albright* overturned *Goodwin* and has held that claims for false arrest and malicious prosecution properly sound in violations of the Fourth Amendment's protection against unreasonable seizures. *Lambert v. Williams*, 223 F.3d 257, 261-63 (4th Cir. 2000). Applying *Lambert*, Lineberger is constrained to rely on alleged violations of his Fourth Amendment rights, as incorporated by the Fourteenth Amendment, when proceeding with his § 1983 claims. Therefore, Lineberger's independent due process allegations under the Fifth Amendment and under the Fourteenth Amendment in Causes of Action One through Three are dismissed with prejudice.

## III. DECRETAL

**IT IS, THEREFORE, ORDERED THAT**

(1) Defendants' Partial Motion to Dismiss (Doc. 66) is **GRANTED**.

Signed: September 23, 2016

*[Signature: Richard L. Voorhees]*

Richard L. Voorhees
United States District Judge